**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | |
|---|---|
| RUSSEL BREAUX, individually and on behalf of all others similarly situated, <br><br> v. <br><br> KAYDEN INDUSTRIES (USA), INC. | **Case No.: 4:20-cv-00027** <br> Collective Action (29 U.S.C. § 216(b)) <br> Rule 23 Class Action |

**CLASS & COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

1.     Kayden Industries (USA), Inc. does not pay overtime to its solids control equipment operators. Instead, Kayden Industries pays these workers a day rate with no overtime compensation, even though they work many hours in excess of forty hours per week. Because this practice results in non-payment of overtime wages to Russel Breaux and other similarly situated workers, Breaux brings this collective action to recover unpaid overtime wages and other damages under the Fair Labor Standards Act (29 U.S.C. § 201, *et seq.*) ("FLSA"). Breaux also brings his unpaid overtime wages claim under the New Mexico Minimum Wage Act, NMSA 50-4-19, *et seq.*, ("NMMWA") as a Rule 23 class action.

**JURISDICTION AND VENUE**

2.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

3.     The Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to Breaux's claim occurred in this district.

5.      Breaux worked for Kayden Industries in this district.

6.      Kayden Industries maintains an office in this district.

## THE PARTIES

7.      Breaux was employed by Kayden Industries as a solids control equipment operator.

8.      Breaux worked wherever Kayden Industries sent him, including Louisiana, New Mexico, Oklahoma, Texas, and Wyoming.

9.      Kayden Industries is a global solids control company serving the oil and gas industry in several countries and several states in the US.

10.      At all relevant times, Kayden Industries' gross annual revenues were in excess of a $1 million dollars.

11.      Kayden Industries is in the solids control business for the oilfield.

12.      Solids control refers to the physical process of using shaker screens, pumps, tanks, centrifuges, and other equipment to separate solid particles generated by the drill bit from the drilling fluid.

13.      Kayden Industries employed and/or jointly employed Breaux and the Class Members to operate solids control equipment.

14.      Breaux brings this action on behalf of himself and all other similarly situated solids control equipment operators who were paid a day rate and worked for Kayden Industries.

15.      Kayden Industries paid these workers a day rate, without overtime pay required by the FLSA.

16.      Breaux's written consent to be a party plaintiff is attached as Exhibit 1.

17.      Breaux seeks to represent a class of similarly situated day rate workers under the FLSA pursuant to 29 U.S.C. § 216(b) that is defined as:

> **All current and former solids control equipment operators working for Kayden Industries and who were paid a day rate during the last three years (the "FLSA Class").**

18.     Breaux also seeks to represent a Rule 23 class of similarly situated day rate workers under the NMMWA that is defined as:

> **All current and former solids control equipment operators working for Kayden Industries in New Mexico and who were paid a day rate during the last three years (the "New Mexico Class").**

19.     The members of the FLSA Class and the New Mexico Class are collectively referred to as "the Class Members."

### FACTS

20.     At all times hereinafter mentioned, Kayden Industries has been an employer within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d) and under the NMMWA.

21.     At all times hereinafter mentioned, Kayden Industries has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

22.     At all times hereinafter mentioned, Kayden Industries has been, or has been part of, an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1) because it has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than the statutorily required $500,000 (exclusive of excise taxes at the retail level which are separately stated).

23.     The goods or materials that were produced for interstate commerce that were used by Kayden Industries' employees include computers, vehicles, telephones, safety equipment, and solids control equipment.

24.    Breaux and the Class Members performed duties for Kayden Industries that were integral to its operations, including operating solids control equipment.

25.    Breaux and the Class Members perform dirty, sweaty, oily work in remote locations.

26.    Breaux's and the Class Members' jobs are dangerous, noisy, and require constant exposure to the elements, including extreme cold, heat, wind, and sun.

27.    Breaux and the Class Members are blue-collar workers because they perform repetitive, manual tasks related to operating machinery.

28.    The duties of solids control equipment operators like Breaux and the Class Members do not require a college degree and are usually performed by workers whose highest level of formal education is a high school diploma.

29.    Breaux was employed by Kayden Industries from July 2017 to May 2019.

30.    Breaux and the New Mexico Class members were employed by Kayden Industries in New Mexico for all of or a portion of their employment.

31.    Kayden Industries employed more than 50 solids control equipment operators in New Mexico over the period relevant to this case.

32.    Breaux's claims are typical of other workers impacted by Kayden Industries' day rate scheme because they arise from the application of the identical pay policy.

33.    All of the Class Members equipment operators are owed overtime for the same reason Breaux is.

34.    Kayden Industries is liable to these workers for the same reason it is liable to Breaux.

35.    Kayden Industries paid Breaux and the Class Members a day rate with no overtime premium for hours worked in excess of 40 in a workweek.

36.    Throughout Breaux's employment with Kayden Industries, Kayden Industries paid him on a day rate basis.

37.     Breaux and the Class Members work for Kayden Industries under its day rate pay scheme.

38.     If Breaux and the Class Members did not work, they did not get paid.

39.     Breaux and the Class Members receive a day rate.

40.     Breaux and the Class Members do not receive overtime pay.

41.     This is despite the fact that Breaux and the Class Members often work 13 or more hours a day, 7 days a week, for weeks at a time.

42.     Breaux's typically worked 20 day "hitches" with 10 days off between hitches.

43.     Breaux's normal work-day was 13 hours, but Kayden often required he work more than 13 hour in a day.

44.     Breaux received a day rate for each day he worked for Kayden Industries.

45.     Breaux's day rate was $350 per day.

46.     Breaux and the Class Members received a day rate regardless of the number of hours they worked in a week, even when they worked more than 40 hours.

47.     Breaux and the Class Members are not employed on a salary basis.

48.     Breaux and the Class Members do not, and never have, received guaranteed weekly compensation irrespective of the days worked.

49.     Breaux and the Class Members work in accordance with the schedule set by Kayden Industries and/or its clients.

50.     Breaux's work schedule is typical of the Class Members.

51.     Kayden Industries controls Breaux's and the Class Members' pay.

52.     Likewise, Kayden Industries controls Breaux's and the Class Members' work.

53.     Kayden Industries requires Breaux and the Class Members follow Kayden Industries' and/or its clients' policies and procedures.

54.     Breaux and the Class Members' work must adhere to the quality standards put in place by Kayden Industries and/or its clients.

55.     Breaux and the Class Members are part of a permanent workforce employed to perform all of Kayden Industries' solids control work.

56.     Kayden Industries and/or its clients provide all meaningful capital investment required to perform solids control work. Breaux and the Class Members do not provide anything beyond what employees ordinarily provide to do their work.

57.     The solids control equipment required to service even one drilling rig requires a capital investment of several hundreds of thousands of dollars to millions of dollars.

58.     Such an investment is out of the reach of workers like Breaux and the Class Members.

59.     Breaux and the Class Members depend upon Kayden for their work and are not independently in business for themselves.

60.     Breaux's and the Class Members' incomes depend on the number of days Kayden can obtain work for them.

61.     Breaux and the Class Members do not earn a profit in a business sense because their income is limited to the number of days they work times their day rates, both of which are controlled by Kayden and/or its clients.

62.     Breaux and the Class Members do not experience a loss in a business sense because they only provide what employees normally provide to work, like transportation and personal items.

63.     Breaux and the Class Members are not financially responsible for down time, accidents, spills, or broken equipment.

64.     Breaux and the Class Members are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

65.    As a solids control operator, Breaux was responsible for operating solids control equipment, like shakers, screens, and centrifuges.

66.    All the Class Members perform similar duties related to operating solids control equipment.

67.    At all relevant times, Kayden Industries (and/or its clients) maintained control over Breaux and the Class Members via hiring, firing, discipline, timekeeping, payroll, and other employment practices.

68.    Breaux and the Class Members do not have the power to hire or fire any employees.

69.    Breaux's working relationship with Kayden Industries is similar to Kayden Industries' relationship with the Class Members

70.    Kayden Industries knew Breaux and the Class Members worked more than 40 hours in a week.

71.    Kayden Industries knew, or showed reckless disregard for, whether the Class Members were entitled to overtime under the FLSA.

72.    Nonetheless, Kayden Industries failed to pay Breaux and the Class Members overtime.

73.    Kayden Industries willfully violated the FLSA.

### CAUSES OF ACTION

74.    By failing to pay Breaux the Class Members overtime at one-and-one-half times their regular rates, Kayden Industries violated the FLSA's overtime provisions.

75.    Because Kayden Industries knew, or showed reckless disregard for whether, its pay practice violated the FLSA, Kayden Industries owes these wages for the past three years.

76.    Kayden Industries owes Breaux and the FLSA Class Members an amount equal to the unpaid overtime wages as liquidated damages.

77.    Breaux and the Class Members are entitled to recover all reasonable attorneys' fees, costs, and expenses incurred in this action.

78.    Similarly, by failing to pay Breaux and the New Mexico Class members overtime at one-and-one-half times their regular rates, Kayden Industries violated the NMMWA's overtime provisions (NMMWA § 50-4-22).

79.    Kayden Industries is subject to the requirements of the NMMWA.

80.    Kayden Industries employed Breaux and each member of the New Mexico Class as an "employee" within the meaning of the NMMWA.

81.    The NMMWA requires employers to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of forty (40) hours in any one week.

82.    Breaux and each member of the New Mexico Class are entitled to overtime pay under the NMMWA.

83.    Breaux and each member of the New Mexico Class seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, liquidated damages, treble damages, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper from Defendants.

84.    Breaux and each member of the New Mexico Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by Defendants, as provided by the NMMWA.

## RELIEF SOUGHT

85.    WHEREFORE, Breaux seeks relief against Kayden Industries as follows:

    a.    An order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual consent forms pursuant to 29 U.S.C. § 216(b);

b.  An order certifying the New Mexico Class as a class action under Rule 23;

c.  Judgment pursuant to Section 16(b) of the FLSA finding Kayden Industries liable for unpaid back wages due to Breaux and the FLSA Class members and for liquidated damages equal in amount to their unpaid compensation;

d.  Judgment awarding Breaux and the New Mexico Class overtime for all worked performed in excess of 40 hours in a workweek, liquidated damages, treble damages, prejudgment interest, all available penalty wages available under the NMMWA

e.  Judgment awarding attorneys' fees, costs and pre- and post-judgment interest; and

f.  All such other and further relief to which Breaux and those similarly situated to him may show themselves to be justly entitled.

Respectfully submitted,

**/s/ David I. Moulton**

By: _____

Richard J. (Rex) Burch
Texas Bar No. 24001807
David I. Moulton
Texas Bar No. 24051093
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone: (713) 877-8788
Telecopier: (713) 877-8065
rburch@brucknerburch.com
dmoulton@brucknerburch.com

Michael A. Josephson
Texas Bar No. 24014780
Andrew W. Dunlap
Texas Bar No. 24078444
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Ste. 3050
Houston, Texas 77046
Telephone:     (713) 352-1100
Telecopier:     (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

**Attorneys for Plaintiff**